Okay, the next argued case is number 171180, New York and Presbyterian Hospital against the United States. Ms. Grimaldi. Good morning, Your Honors. May it please the Court. This appeal involves a very straightforward federal statute, 26 U.S.C. 3102b, that mandates indemnification, not just immunity exemption or some other form of equitable relief, in the event that an employer who has collected FICA taxes and paid those over to the government is met with claims by employees for the refund of those taxes. Neither party explicitly can test any of the Court of Federal Claims factual findings. The only factual dispute I've identified in the party's briefs is the government statement that the district court's order approving the settlement, quote, did not recognize that the, square bracket, district court plaintiff's claims could reasonably be characterized as seeking a tax refund, but rather, quote, simply recited the hospital's own assertions regarding the proper characterization of the claims. Do you contest any of the factual findings or any of the government's other factual statements? Well, on this appeal, this determination is reviewed de novo, and the government itself has withdrawn its request that the court reach the merits-based arguments that it advanced below, including the one that Your Honor just referred to, that the southern district actually reached the decision, determined the nature of the claims in this case. But if we were to reach that issue, notwithstanding the government's request that if jurisdiction is found, as we believe it properly should be, that question should be remanded, we would, in fact, disagree with that assertion because, in fact, the district court in New York did not ultimately decide that issue. There is an interlocutory decision that is not final, that would not collaterally stop the government under the established standards for that. And in any event, in this settlement order, we would submit that the court recognized that the claims that were brought by the residents were claims for tax refunds and that that was one of the reasons that the settlement was reasonable on the plaintiff's side because they settled for pennies on the dollar because ultimately they had a preemption problem. Yes, Your Honor. If we agree that the CFC erred in its interpretation of indemnify, do we need to remand that issue for the CFC to consider in the first instance? If you agree the court erred, then we would find that this statute is reasonably amenable to an interpretation that it's money mandating. That would be sufficient for Tucker Act jurisdiction. And in the Contreras decision of this court, this court made clear that once the court finds Tucker Act jurisdiction, that would apply to any subsequent remand and would not have to be revisited. We are faced with the en banc decision in Fisher, correct? Yes. And Fisher made clear that we need to look at more than just whether or not there's a non-frivolous allegation as it relates to jurisdiction, right? Since Fisher, you have Mitchell and you have White Mountain Apache tribe. No, White Mountain was decided before Fisher. Fisher actually cited White Mountain. Okay. But in terms of what you need to decide for jurisdiction, and I apologize, I have the order wrong, you only need to determine that the statute is reasonably amenable to an interpretation that's money mandating and that the plaintiff falls within the class of plaintiffs who would be eligible. Right, but the question of how you decide whether it's reasonably amenable to this interpretation, Fisher says has to be a lot more than you would normally be looking at if you were saying is there, for instance, a non-frivolous allegation that gets you past a motion to dismiss, right? What you would do is what the court recognized, for example, in the Indian Harbor case and in all the cases of statutory construction, you would start with the plain, unambiguous terms of the statute. If they are unambiguous, you don't need to look any further. If the language is clear, as it is here, if the word indemnification is unambiguous, that's the beginning and end of the court's inquiry. How can we say that the word indemnify is unambiguous given the fact that the statutory scheme separately equates indemnification with absence of liability and that there are two different potential definitions for that term? I mean, isn't this clearly an ambiguous term? I would submit that that reasoning may have the cart before the horse because the term itself, indemnification, under every single dictionary that either party has cited, has a compensatory meaning. It has two meanings. Under all of those dictionaries, there are two meanings. And one of them, the dominant one, and the one that was in effect in Black's Law Dictionary at the time, is to compensate. Wait, are you telling me that when I look at a statute, that to decide if it's ambiguous, I'm only allowed to look at a dictionary? No. Ambiguity has to be assessed based on the entirety of the scheme, right? That would be true. I would urge the court to be careful not to confuse the test for Tucker Act jurisdiction with the test for an initial waiver of sovereign immunity, which we would agree would allow ambiguities to be resolved in favor of the government. In the case of Tucker Act jurisdiction, all that has to be shown is that the statute be fairly amenable to an interpretation that it's money-mandating. Right, so you've got to do the interpreting, right? Right. It doesn't say that as long as one side says it should be interpreted one way, that that's enough. Right. And we're not submitting that. We're saying that on the plain language, the court is required to interpret terms according to their common, ordinary, and contemporary meaning. That's the test, again, in the Indian Harbor case, which Your Honor authored. To the extent there is any ambiguity, it would be appropriate to look to other sources, but we would suggest that that meaning of indemnification, which has universally been recognized to involve compensation, is sufficient to show it's fairly amenable to an interpretation. I just don't see how you square this with Fisher and with what we're told to do in the Enbach decision in Fisher. In the event, looking at all of the evidence that the court could look at, the plain meaning of the statute, the dictionary definitions in effect at the time, even if the court were to go to legislative history, I would suggest that the reference to the statute How about the rest of the statutory scheme? and the rest of the statutory scheme, they all support the interpretation of this provision as meaning compensation in money damages. And that's because we know that a statute is to be interpreted as written. This court, instead of interpreting this statute as written, referred to other statutes and to the headings of other statutes, which is prohibited. As to the relevant legislative history, the only legislative history... Why is it prohibited to look at the entirety of a statutory scheme when you're trying to decide if part of that statutory scheme is ambiguous? Well, again, you would start with each provision and you could look to the whole scheme, but you would also accept that when Congress uses certain words in certain provisions in an integrated scheme and not in other provisions, that it acts intentionally. That's the Sebelius case. And what the court did here was it ignored that cardinal rule and it said in other instances, Congress has used the language shall not be liable. It meant the same thing when it used shall be indemnified. That was a liberty that violates basic rules of statutory construction. So we start with it ignored the plain meaning under every dictionary. It ignored the case law that universally recognizes the word indemnified to be compensating by money damages. It improperly looked to legislative history of other statutes but did not give proper weight to the only relevant legislative history, which was of 3102B itself, because that history said that that statute was enacted to protect employers. Let me take you to the fair interpretation standard. The government cites Navajo Nation. And in a footnote in the gray brief, you describe, you sort of, well, you call it inapposite because it's under the Indian Tucker Act. But much of the Supreme Court precedent, including White Mountain, involves claims under the Indian Tucker Act, and the Supreme Court's analysis under the two statutes doesn't seem to differ. You aren't actually suggesting we can't rely on cases arising out of the Indian Tucker Act? I don't think that that's a fair statement. In fact, what we said was even applying the analysis the government set out, we would meet it. All that is required is that you identify the money mandate in the statute. Don't talk when a judge talks. Okay. Navajo Nation can be distinguished based on the fact that it involves a breach of trust. Both hurdles that Navajo Nation discusses involve specific fiduciary and other duties. Why don't you try and explain why trust cases arising out of the Indian Tucker Act are distinguishable? Well, I would say that the issue in that line of cases was whether it was a bare trust or a trust that created fiduciary duties. And we know in the White Mountain Apache case, the court found that it wasn't merely a bare trust, reversing the court of claims and affirming this court, and that that trust relationship gave rise to obligations that were enforceable through a remedy of money damages. Note, the government in that case argued, as the government in this case, that the sole remedy was injunctive. And the Supreme Court made clear that that would not be dictated by the law and would not make the tribe whole, nor would it deter the government from conduct that could injure the tribe. We would suggest that that reasoning applies here as well. If this court were to construe indemnification in an unprecedented way, solely to mean immunity, then the government would not be required to make the hospital whole, who is out of pocket, over $6 million, nor would the government be incentivized to step in early and even adhere to its own interpretation of the statute as an immunity statute. But if, in fact, what the statute explicitly says shall indemnify, this seems to be a significant distinction. I'll ask the government the question, who they expect under the statute to provide the indemnification if it's not the government. Yes, Your Honor. And, in fact, the payee in that same provision of 3102B is not defined. That is, the employer pays over the taxes and shall be indemnified. It's obvious it's paying the taxes to the government, and the indemnitor has to be the government because there are only three parties in that transaction, the employer, the employee, and the government. But the district court, nonetheless, and this is an argument on the other side, did not simply refund. They paid them over as damages. Isn't that right? As tort damages. In the Southern District case? Yes. They were sought as damages, and ultimately they were paid in part of a settlement where the hospital asked. It was settled, but they requested damages, and this was the measure of the damages was the amount of the payment that should have been treated differently. It was exactly dollar for dollar the taxes that they claimed. It was dollar for dollar, but it was still damages, and then this is, other than that, the fact that the statute says shall indemnify, and it's clear that the indemnification under the statute is intended to come from the government to reconcile that with the district court judgment. Yes, and I would suggest that that... But why did you appeal the district court judgment? Well, actually, we... The fact that you couldn't be sued, right? We went through great lengths. We sought mandamus, early mandamus. The government was asked to participate in the mandamus, refused to participate. I mean, at this point, the hospital is out twisting in the wind all by itself. Twisting in the wind, but, I mean, the allegations is you're twisting in the wind because you didn't make a request for a refund. It's never been contended by the government that the hospital acted improperly. The hospital complied fully with the internal revenue code. The allegation is, in fact... Well, you don't have to ask for a refund. Exactly, and so... But you did for your other residents. You just chose not to do it for these people. Again, that... You certainly knew how to do it. And, again, there was no obligation to do that, but that still is a disguised refund claim that should have been preempted under 7422. The government admits that, and also was covered by 3102B. The government admits that, and I... But under your theory, then the government would have to indemnify you regardless of what you choose to pay and regardless of what the theory was. I mean, these were tort theories. They had nothing to do with the tax refund. They said that you actually engaged in a charade to reduce your own tax liability and to not protect your residents. That's a tort theory. It was not a refund theory. Well, under Clintwood-Elkhorn, it doesn't matter any type of theory whatsoever. A taxpayer claim to get a refund of taxes is preempted under 7422. That's right. And there was a judgment made when the hospital left without the support of the government, facing millions and millions of dollars in class-wide damages, told by the district court to attend a settlement conference, managed to reduce its liability to a fraction of what it would have been. This is a not-for-profit institution that doesn't have the funds. The funds are in the coffers of the government. It made the rational decision, after consulting and inviting the government to participate, to settle to mitigate damages. But if that is a defense to indemnification, there are many, whether it's notice, whether it's the reasonableness of the settlement. Those can be heard later back before the court of claims as merits arguments that the government itself has said that it's not raising at this stage on appeal. Okay, let's hear from the government, and we'll save you rebuttal time. Thank you, Your Honor. Mr. Christensen. And I'll ask you the same question. The statute says, shall indemnify. Who, in your theory, does the statute contemplate to provide the indemnification, if not the IRS, not the United States? Your Honor, what the statute says is that the employer who remits the tax shall be indemnified. Shall be indemnified. Shall be indemnified. Who do you expect to provide that indemnification? Well, Congress provided the indemnification. What Congress did when it enacted... Did they get it from Congress? Say, please give us some money, Congress? No, Congress indemnified the employer by providing the employer with immunity against any claims. It says, shall be indemnified. That's right. They didn't say, shall be immune from paying the money back. They say that if you paid... If you made a mistake, let's say it was a mistake, it doesn't matter, that you shall be indemnified. Who did the statute expect under that statute? Who, in the government's theory, was expected to provide the indemnification? We know that the money wrongfully was withheld, given to the United States. You're saying, nonetheless, the United States can keep this wrongful exaction? Your Honor, the reason the statute does not identify an indemnitor is because Congress, in providing that employers shall be indemnified against the claims of their employees, was providing immunity to the employers. Are you sure you're with 802A of the Social Security Act? I may be. It's the predecessor to 3102B? Yes. Okay. So, are you familiar with the legislative history of this statute? Did you look? My recollection, Your Honor, is that the legislative history didn't... The House report on 802A says, to protect the employer, he is indemnified against any and all claims and demands with respect to the part of the wages of the employee which he withheld. So you're good, right? Right. Up to the correct amount withheld and paid to the United States. Because the House report contemplates indemnification up to the correct amount, Congress understood indemnification to include the payment of money, did it not? I don't think that's correct, Your Honor.  from being sued up to the correct amount. Is that what you're telling me? What I'm saying, Your Honor, is the term amount in the statute, in fact, it doesn't modify the term indemnified in the statute. I'm talking about the legislative history, though. Yes. Well, as enacted, the actual language that was enacted doesn't say up to the correct amount. Instead, it's language similar to what we have here that the employer... But that's a separate question, isn't it? That if we resolve the principle of what entity the statute intended to provide the indemnification, we then get to the question of the correct amount. Well... Is that right? No, Your Honor, because this is providing immunity for the employer. The district court decided the correct amount. You're saying we don't have to decide that because the district court decided it. No, because the statute is not capping indemnification at a specific amount. And let me just be clear, the word amount, as used in the statute, does not modify indemnified. It says, shall be indemnified against the claims and demands of any person for the amount. The term amount is modifying claims and demands. So the employer is indemnified, is immune against the claims and demands of an employee for the amount that the employer has committed. But if they ask for more than the correct amount, they're not indemnified? No. Well, it says any... The employer... I mean, they're... In other words, so if their claim is for... Let's say that the... They're not interns. The hospital employees say, well, you paid the government, incorrectly paid the government $10,000, but we want a million. So they're indemnified against the first $10,000, but the other $990,000, they can go ahead and pursue it? No, Your Honor. The employer would be indemnified against any claims or demands by the employers for... You say they don't get anything. There's no indemnification. The indemnification is the immunity that Congress provided... It doesn't say immunity. Let's go back to that statutory argument. So your argument is that as many or more, or even the more prevalent definitions, said that indemnification means immunity at the time that the act was passed. That's correct, Your Honor. But you can see that there are some other definitions that would refer to indemnification in the way that we now think of it, right? Yes. So one of the problems I had was that you tried to argue that the statute unambiguously on its face because it used the word indemnification and because those dictionaries do support you as well as the other side, that it was unambiguous. But isn't it really an ambiguous statute that we then have to interpret using other principles of interpretation? I agree that the term indemnified in and of itself is ambiguous. Okay. And is susceptible to both meanings at the time that Congress enacted the statute. Your position really is not that it's unambiguously provides for immunity. It's that the ambiguity can be reasonably resolved. That's correct. When it's placed in context of the entire code and the refund scheme and the cases that have held that there is no private cause of action for an employee to sue its employer for collecting FICA taxes. I do want to go back to this. But there are statutes that unambiguously prevent a lawsuit against employers from claims by employees. And they're different language. Those statutes, when they were originally enacted, used the same term, indemnified. The fact that subsequent Congresses in later years modified that language, perhaps updated that language with more modern language, doesn't impact what the 1935 Congress made. But then we go back and look at the leg history, right? And the leg history talks about payment of money. It says up to the correct amount withheld and paid to the United States. Right. I interpret that legislative history to be providing protection for the employers against any claims or demands of their employees by providing immunity. With respect to the private right of action under 1302B, or I'm sorry, 3102B, there's very little case law out there. I mean, did people just stop trying to make these claims? Or, you know, you've got the cases don't even go into it in much detail. There's nothing else out there? I mean, we've cited the district court cases and the circuit court cases from the Third Circuit and the Eleventh Circuit. Well, most of those cases that you cite don't actually, there's really only one or two that mention 3102B. Most of them just mention FICA generally. Right, but there's no private cause of action under FICA, which would include our statute. Right. But all I'm saying is that it's very sparse case law. I would agree. Only two circuits, and one of them didn't say much. So my question is, there has not been more development of this issue? Not that I'm aware of. Okay. And again, reading the provision as a reimbursement provision would be inconsistent with the holdings in those cases that there is no private cause of action for an employer or employee to sue its employer. I do want to come back to the standard used in applying or in deciding Tucker Act jurisdiction. Because a hospital misinterprets how the fair interpretation rule is to be implied. The question is not whether the word indemnified can be fairly interpreted to include a right of reimbursement. Rather, the first step is to decide what rights and duties are in fact imposed under the statute. And then the fair interpretation rule applies in deciding whether a breach of those rights or duties is compensable through damages. So, again, the fair interpretation rule asks whether a statute can fairly be interpreted to mandate compensation as a result of a breach of the rights or duties it imposes. But the preliminary question as to what rights or duties are actually created by the statute, what does indemnification mean, that must be based on a correct interpretation of the statute itself. And that's the pattern that the Supreme Court has followed in its decisions. In the Mitchell cases, it first decided what fiduciary obligations were created by the relevant statutes. And after it had defined those obligations, only then did it reach the fair interpretation analysis to decide whether, given those obligations, the statute could be fairly interpreted to require damages as a result of a breach of those obligations that were imposed. So the court should construe the word indemnified not with a deferential standard, but... Using standard statutory construction canons. But there are some awfully good arguments Sutherland-type arguments that defeat you on that. And your friend cited some of them. She didn't say Sutherland, but... You know, I think there are strong arguments based on the statutory language of the statute itself that confirm that it is solely an immunity provision. For example, the statute says shall be indemnified against the claims. That would be discourting if what Congress meant was that they will be reimbursed for claims. The use of the word against makes that awkward. Also, the thrust of the statute is to make employers liable for the payment of... If I find another statute that uses against in the other context, do you lose? Your Honor, it's indicia that's contained in this statute of Congress's intent. Like I said, the thrust of the statute also is that employers shall be liable for the payment of the tax. So if we read the very next clause to allow them to pay claims and demands of their employees and then turn around and be entitled to reimbursement from the United States, it undermines the thrust of the statute itself. And again, as the Court of Federal Claims held below, reading the statute as a reimbursement provision is inconsistent with the refund scheme established by the Code which requires employees seeking a refund of tax to do so directly with the IRS. So was the answer no? To which question, Your Honor? I'm sorry. The question you were answering all that time, which was, if I find another statute which uses that language in exactly the opposite context, do you lose? And you launched off saying, well, we have to look at this statute alone. No, Your Honor, that wouldn't result in a government loss here. The Court needs to consider the statute in its entire context, the statute with surrounding statutory language as well as its context within the internal revenue. Well, you were telling me that the use of the word against is a strong indicia. What I said was that it would make for an awkward reading. I think I quoted you, actually. It would make for an awkward reading if what Congress was doing was providing for reimbursement. Again, you know, the government's interpretation of this statute doesn't just benefit the United States in this case, but it's beneficial for employers in general because it provides them with a more valuable tool of immunity, which is a more valuable tool to protect employers than a reimbursement would, a reimbursement provision. Did the United States mention that when the hospital approached it? It certainly did. In fact, the United States went on record when it moved to dismiss the hospital's third-party complaint, the United States went on record that its interpretation of the statute was that it was an immunity provision. And that's contained in the United States motion to dismiss as well as the reply brief, which has a greater detailed discussion of the United States position that the statute was an immunity provision. So when the statute was enacted with the participation, one assumes, of the United States of the Revenue Service and it was enacted saying indemnified rather than immune, we assume that our Congress people don't know how to write statutes or the Revenue Service or anyone else to include something that you tell us is at least ambiguous, if not wrong. That's, if you look at the, the court must construe terms based on the ordinary contemporary meaning of the terms. And at that time, as we've illustrated, indemnified meant... How long ago was this statute written? In Old English or what? That indemnify means immune. Yes. In 1935, Your Honor. And the dictionary has established that that usage had both had a longer history and was not obsolete in 1935. And that's established through the dictionary definitions. So they meant immune and they wrote indemnify. Because they mean the same thing, Your Honor. That's what Congress meant when it said, when it said the employer shall be indemnified. But the legislative history of which Judge Wallach has reminded you says otherwise. Will we ignore that? I don't interpret the legislative history to be placing a cap on the amount of indemnification. Rather, it's providing protection for employers against all claims and demands that an employee may make for the amount that the employer has paid. So therefore, this employer is not protected as a result. That's the intention. That's our government's intention that this employer is not protected. Your Honor, this employer ought to have asserted Section 3102, immunity under Section 3102 to begin with. That is what Congress intended to provide the employers with that too. Well, didn't they do that? I thought that both sides were pretty much in accord that the district court erred in its determination. They never asserted this statute, immunity under this statute, even though the hospital was aware that the government interpreted this statute to be an immunity provision. Instead, they never raised it, but they later settled the medical resident's claims. But the government had gone on record in its papers filed in connection with its motion to dismiss that this was an immunity provision. And yet, being aware of that, the hospital still went ahead, never raised immunity as a defense in the district court litigation, but instead settled the medical resident's claims. My recollection was the other way, so I'm going to ask your opposing counsel about that. Yeah, and the government's filings on the motion to dismiss unfortunately are not in the record in this case, but they're public filings of which the court can take judicial notice. There's a motion to dismiss and there's a reply brief that the government filed which goes into further discussion of this. Those that were filed in the southern district? That's correct. And they weren't included in the proceedings below as part of the record by either party. But the court can take judicial notice of those. Any more questions for Mr. Christensen? Okay. Thank you, Mr. Christensen. Mr. Ganoz. Ms. Ganoz, I came away from the record under the impression that that allegation of immunity was raised before the district court. Was it not? Your Honor, in the district court in New York, the government specifically argued that 3102B did not apply and protect the hospital. And I would refer, Your Honors, to the government's reply brief which I agree that... Did the hospital argue that it did? The hospital did. The hospital did not argue that it did. But that shouldn't make a difference because the government itself... But the hospital did argue that it could not be sued because of 7422, right? Exactly. And the government's position is that 3102B, for an employer, is coterminous. But in the district court, the government stated by its plain language, Section 3102B protects employers from claims alleging wrongful collection of FICA taxes. There's a sick there. Quote, it does not protect the hospital from common law claims based on its independent tortious conduct against former employees. That's at page 4 of the reply brief. Well, that's... I mean, that's a given, right? I mean, you would agree with that interpretation of the statute. You disagree with the district court's interpretation of what those common law claims asserted. I actually... I don't believe that I would agree that disguised refund claims characterized as tax... I'm sorry. Disguised refund claims are outside the scope of 7422 or 3102B. Well, that's... You have to argue to the district court that they really are just disguised refund claims. She didn't buy that. Well, there isn't a final ruling, but yes, that's true. I will say that the government has, before the court of claims, reversed its position after the hospital was out of pocket and then said that 3102B would apply to these claims and that the government should, at the hospital, should have asserted 3102B as an immunity. Although, when in the district court, the government took the position that 3102B did not apply or protect the hospital. But it didn't say it didn't apply. The government couldn't decide what the claims really meant. It just said, if it is a refund claim, essentially, you're immune. But if you've done some other independent, tortious act, you wouldn't be immune. Well, in this, in the court of claims below, the government at appendix 399 stated that it believed that 3102B should have applied to these claims and that 7422 should have preempted them, regardless of how they were styled before the court below, which is the correct interpretation because that's what Clint Wood warns against that clever plaintiffs will characterize what were quintessentially tax refund claims as tort claims in order to evade 7422's preemption. And so why didn't you just make that argument to the district court? We did. And the court erred. And no court has agreed with the southern district's ruling in the Childers case. In fact, the district court below, I'm sorry, the court of claims below expressly disagreed with the district court's ruling. So you had the right to appeal that. And again, if the failure to appeal rather than reasonably settle to avoid, you know, many millions of dollars of exposure is a defense to indemnification, the proper time to address that would be on remand. We're doing a certain amount of second guessing here. In the district court, they could not, the physicians, could not have sued the United States on the district court. So they had to bring a tort action against the hospitals. And so to argue the issues of the, that you violated the law by making this deduction. And doesn't that end? I mean, I'm reluctant to say that the district court made a lot of mistakes when there was no way the United States could have been a party to that action. The claims, the case law is very clear and was briefed for the court following Clayton Wood Elkwood. Private employers are equally immunized under 7422 from taxpayer claims. It's true, the government. They're equally immunized, but they could not have been a defendant. And they could not have been asked for restoration, whatever word you want to use, in the district court. But both the government and the employer should have been immune to claims that were, as late as these claims were brought. The court, again, in an unprecedented decision, which just tells you how rare this circumstance is, failed to properly enforce 7422, leaving the private employer exposed to these class-wide damages. And we submit it's for that specific but obviously rare instance that the indemnification under 3102b exists. Now, the Umland and McDonald cases, which found no private right of action, they merely say that there isn't a private right of action that's true. We agree. But that doesn't mean that the extra protection for employers in the rare case a court lets a case go through vanishes. I mean, we have very commonly indemnification statutes for directors and officers. The underlying claims may be frivolous. The fact that indemnification exists is not a basis to allow a frivolous claim to proceed. But the converse is not true. Just because there is a frivolous claim should be stopped at the doorstop of the court doesn't deprive the employer or director or officer of indemnification if and when such a frivolous claim proceeds. That's what happened here. Everybody agrees. The government agrees. The court below agrees. Obviously the hospital... Well, the court below didn't agree. The court below said taking the hospital's allegations as true, which... And your allegation was that it was nothing more than a disguised refund claim. So the court below said if it was a disguised refund claim, then it could not go forward under 3102. But it did not say we disagree with the district court whether it was a disguised refund claim. The court actually did hold... There's a big body of law on disguised refund claims. I'm sure Your Honor is aware. The court below did hold that the Childer's case had been criticized by other courts, other precedents, and that the court did not... The court of claims believed the district court did not have jurisdiction because of 7422. And it chose not to follow the Childer's decision. So I would respectfully submit that the court did expressly disagree with the district court's finding under 7422. Without adopting the Childer's claim. I mean, that is the problem with artfully fed claims. Just a very... I know that... Could you just wrap it up one final statement? Okay. We would respectfully submit, Your Honor, that this is the case, albeit a rare one, where it's appropriate to enforce the express terms, the unambiguous terms of the statute, and provide indemnification to the hospital that's out of pocket. It is fully consistent with the overall scheme that is in the Internal Revenue Code. The hospital complied with its obligations. It is out of pocket. If this is not enforced as written, the government will have no incentive to intervene in these types of cases to ensure that 74-22 preemption is properly applied by the courts, and the private employer, who is out of funds, will be left exposed to huge claims, and itself will have... Counsel, you ought to run for the Senate. You're really doing well on a filibuster. Okay. In any event, Your Honors, we respectfully submit that the decision below was clear error and should be reversed. Okay. Thank you. Thank you both. The case is taken under submission. All rise.